UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:21-CR-040 |
| ) | |
| SAMUEL D. HILL ) | |

## **MEMORANDUM AND ORDER**

The defendant is charged with heroin, fentanyl, methamphetamine, and firearms offenses.[1] The defendant has filed a motion to suppress currency and cell phones seized from his person during a purportedly unlawful detention and search. [Doc. 22]. According to the defendant, "[t]he police officer who ordered Mr. Hill out of a car and handcuffed him based on suspicion of providing a false name lacked reasonable suspicion, let alone probable cause, to believe that he committed any crime." [*Id.*]. The United States has responded in opposition to the motion. [Doc. 23].

United States Magistrate Judge Debra C. Poplin conducted an evidentiary hearing and heard arguments on November 16, 2021. Now before the Court is the magistrate judge's January 20, 2022, report and recommendation ("R&R"), recommending that the suppression motion be denied. [Doc. 64].

---

[1] The defendant was indicted along with codefendant Sarah McKinney, who has subsequently pled guilty to three counts of making a false and fictitious written statement during the acquisition of firearms.

The defendant has filed objections to the R&R. [Doc. 77]. The United States has again responded in opposition. [Doc. 78]. The Court has thoroughly reviewed the R&R, the parties' filings, the transcript of the evidentiary hearing, and the various exhibits introduced at that hearing. For the reasons that follow, the defendant's objections will be overruled.

I.

*Motion and Objections*

A. Standard of Review

A district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." *See id.*; 28 U.S.C. § 636(b). A district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

B. Factual Background

Pages 2 through 25 of Magistrate Judge Poplin's R&R summarize the testimony and other evidence presented in this case. The defendant concedes that those pages "accurately describe[] the relevant facts and position of the parties." [Doc. 77, p. 2]. The undersigned agrees and will therefore only highlight the most relevant portions of the magistrate judge's findings and conclusions.

Codefendant McKinney made two multi-gun purchases from a licensed firearms dealer in late April 2020. [Doc. 64, p. 3; doc. 67]. Knoxville Police Department ["KPD"] Task Force Officer Todd Strickenberger learned of those purchases and became suspicious that McKinney was unlawfully buying the guns for another person. [*Id.*, p. 3-4].

As part of his investigation, Officer Strickenberger surveilled McKinney on May 13, 2020. [*Id.*, p. 4]. He followed McKinney, who was driving a Chevrolet SUV, and noticed that she was being closely trailed by an Acura. [*Id.*]. Officer Strickenberger eventually made a traffic stop on McKinney's SUV at a gas station, based on probable cause of her driving on a suspended license. [*Id.*, p. 6].

The Acura was present at the same gas station. [*Id.*]. While Officer Strickenberger questioned McKinney, he directed another officer to stay with the Acura due to security concerns. [*Id.*]. The defendant was a backseat passenger in the Acura. [*Id.*, p. 7]. The driver of the Acura admitted that his vehicle contained drug paraphernalia, and Officer Strickenberger called for additional backup. [*Id.*]. Among the backup was KPD Officer Chris Hutton, who primarily interacted with the defendant during the stop. [*Id.*, p. 11, 14-15].[2]

---

[2] According to the R&R, "Officer Strickenberger testified it was his practice as a law enforcement officer to brief other officers when they arrive at a scene on what is happening; however, Officer Strickenberger stated he could not recall having said anything to the officers *who were arriving at the scene* at the Exxon gas station about what was happening." [*Id.*, p. 8] (emphasis added).

Early in the traffic stop, Officer Strickenberger questioned McKinney, who stated both that she had purchased the firearms for the defendant and that the defendant is a heroin dealer. [*Id.*, p. 7-8]. The Acura's driver consented to a search of his vehicle, and all three occupants were removed prior to the search. [*Id.*, p. 8]. Also prior to the search, a K-9 officer was deployed, and the dog alerted on the Acura. [*Id.*, p. 8, 18]. During the search, officers found suspected narcotics near where the defendant had been seated. [*Id.*, p. 18]. Officer Hutton then searched the defendant and placed him under arrest. [*Id.*].[3] Two cell phones and $2,100.00 were seized from the defendant's person. [*Id.*, p. 28].

> In pertinent part, the R&R concluded,
>
> Defendant asserts that law enforcement lacked reasonable suspicion or probable cause to believe he was committing a crime, prior to conducting the search that led to the seizure of the cellphones and currency. The Court notes that Defendant's arguments seem to focus almost entirely on the knowledge held by Officer Hutton, his interactions with Defendant, and the validity of Defendant's detention as part of Officer Hutton's suspicions that he was committing criminal impersonation. However, Defendant's arguments ignore the ongoing drug trafficking investigation. The Court finds that the testimony and evidence presented at the hearing support the Government's position that detaining Defendant and the search that led to the seizure of the cellphones and currency were appropriate under the circumstances.
>
> Officer Hutton testified that Defendant was detained by the front of a patrol car, while Officer Baldwin led the drug dog around the Acura. Officer Hutton handcuffed Defendant when he suspected that Defendant had given a false name. Upon checking Defendant's identification and confirming Defendant's identity, Officer Hutton did not remove the handcuffs. Instead, following the drug dog's alert, Officer Strickenberger, who had learned from McKinney that Defendant was a drug dealer, conferred with Officer Hutton

---

[3] The defendant had already been handcuffed due to an earlier discrepancy regarding his identification. [*Id.*, p. 20-21].

4

and the other officers. An unnamed officer then placed Defendant in the back of a police vehicle.

The Court notes that handcuffing Defendant and placing him into the back of the police car may have converted the investigatory detention of Defendant into a full arrest, which would require probable cause. *See, e.g.*, *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991) ("[W]e have no doubt that if after refusing to consent to a search, a reasonable person was placed in the back of a police car by law enforcement agents who had no intent to allow him to leave, that person would have believed that he was not free to leave. Therefore, we conclude that when [the suspect] was placed in the police cruiser, he was seized within the meaning of the Fourth Amendment."). The Court notes that the facts of *Richardson* do not perfectly align with the facts here. However, the intrusiveness of the detention undoubtedly increased when Defendant was cuffed and placed in the back of a police car.

Whether or not Defendant was arrested for purposes of the Fourth Amendment at the time he was handcuffed and placed in the police car, the Court finds that the officers did have probable cause to effect an arrest on Defendant at this point. The Court also notes that Defendant argues Officer Hutton had no knowledge of the ongoing drug trafficking investigation such that it was his duty to uncuff Defendant immediately upon his realization that Defendant was not committing criminal impersonation. The Court disagrees. At the point when Officer Hutton realized Defendant was not committing criminal impersonation, Officer Strickenberger had already been informed by McKinney that Defendant was a drug dealer, Orr had admitted that there was contraband in the vehicle, and a K-9 unit had been deployed and alerted on the vehicle.

The Court notes that the full extent of Officer Hutton's knowledge of the ongoing drug trafficking investigation is unclear, however, the "collective knowledge doctrine" is relevant and applicable in this case. The video and testimony presented at the hearing indicate that Officer Strickenberger had received information linking Defendant to drug trafficking crimes, and Officer Hutton was in communication with Officer Strickenberger throughout the stop.

> It is well-established that an officer may conduct a stop based on information obtained by fellow officers. Variously called the 'collective knowledge' or 'fellow officer' rule, this doctrine recognizes the practical reality that 'effective law enforcement cannot be conducted unless police

5

officers can act on directions and information transmitted by one officer to another' we impute collective knowledge . . . even when the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop.

*Lyons*, 687 F.3d at 765–66 (internal citations omitted).

The Court thus finds that probable cause to arrest Defendant had been established such that placing Defendant in the vehicle was appropriate and not violative of Defendant's rights. Furthermore, after Defendant was properly placed in the police vehicle, a search of the red Acura was conducted, and Officer Hutton testified that he participated in that search and found suspected narcotics near where Defendant had been seated. It follows that this discovery of the suspected narcotics, along with the collective knowledge mentioned previously, clearly established probable cause for the search of Defendant's pockets that led to the currency and cellphones that are the subjects of the instant motion to suppress.

Officer Strickenberger testified that McKinney had informed him she had purchased the firearms for Defendant and that he was a heroin dealer. Furthermore, Orr [the driver] admitted that there was contraband in the vehicle and consented to a search of the vehicle. A drug detection dog was also brought to the scene before the vehicle was physically searched, and the dog alerted on the vehicle. An alert by a trained drug detection dog provides probable cause to search a vehicle. *United States v. Navarro-Camacho*, 186 F.3d 701, 706 (6th Cir. 1998). After the vehicle was physically searched, the officers found a firearm in the front passenger door and suspected heroin in the rear of the vehicle near where Defendant had been sitting. There was some discrepancy about where the suspected heroin was found in relation to the exact spot where Defendant had been sitting, but the Court finds that does not negate the officers' probable cause that Defendant may have been involved in drug trafficking. Instead, the location of the suspected heroin, which was near where Defendant was seated, and the information that Defendant was a drug dealer provided by McKinney to Officer Strickenberger supported that probable cause. Ultimately, the Court finds that, these facts taken together, gave the officers probable cause to believe Defendant was committing drug trafficking offenses, to arrest him for drug trafficking, and to search his person incident to his arrest. Thus, the seizure of the cellphones and currency did not violate the Fourth Amendment.

Defendant argues that he should have been immediately released, once the officers confirmed his identification and knew that he was not committing criminal impersonation. The Court finds that even when Officer Hutton confirmed Defendant's identity, Defendant was still a suspect in the ongoing drug trafficking investigation. Defendant was handcuffed based on Officer Hutton's belief he was committing criminal impersonation at approximately 13:17:29 of Exhibit 1. Although the extent of Officer Hutton's knowledge of the broader investigation was unclear, Officer Strickenberger was present on the scene and came over to where Defendant was being detained not even a full minute after he (Defendant) was placed in handcuffs. At that point, Officer Strickenberger had already been told by McKinney that she had purchased the firearms for Defendant and that he was a heroin dealer. Orr had also already admitted that there was contraband in the vehicle, and the drug dog had alerted on the vehicle. As previously discussed, the "collective knowledge" doctrine is relevant here, and that collective knowledge was sufficient to establish probable cause to arrest Defendant and search his pockets.

The Court finds that the officers had probable cause to arrest Defendant for drug trafficking, to search him incident to his arrest, and to seize the cellphones and currency from his pockets. Even if all suspicion of criminal impersonation was extinguished shortly after Defendant was handcuffed, probable cause that Defendant was involved in drug trafficking existed under the totality of the circumstances. Thus, the Court finds the seizure of the cellphones and currency comports with the Fourth Amendment.

[*Id.*, p. 34-38].

### C. Defendant's Objections

The defendant

specifically objects to the Report and Recommendation's finding that arresting Mr. Hill and the subsequent search that led to the seizure of the cellphones and U.S. currency were appropriate under the circumstances. . . . Mr. Hill specifically objects to the finding that law enforcement officers had probable cause to arrest Mr. Hill when he was placed in the back of the patrol car. . . . Finally, Mr. Hill specifically objects to the finding that officers had probable cause to arrest Mr. Hill for drug trafficking and to the search of his person.

7

[Doc. 77]. Ultimately, the defendant argues that the collective knowledge doctrine was misapplied by Judge Poplin because the R&R "concedes that the extent of Officer Hutton's knowledge of the drug trafficking investigation was unclear." [*Id.*]. The defendant further argues that codefendant McKinney's information was unconfirmed and unreliable, and that neither "Officer Hutton or Strickenberger had probable cause to arrest Mr. Hill." [*Id.*].

## D. Analysis

The defendant correctly notes that, for the collective knowledge doctrine to apply, "(1) the officer taking the action must act in objective reliance on the information received; (2) the officer providing the information must have facts supporting the level of suspicion required; and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012). This Court finds that standard easily satisfied by the facts of this case.

Officer Strickenberger was initially investigating straw purchases of firearms by McKinney. McKinney subsequently told Strickenberger both that she had bought the guns for the defendant and that the defendant is a heroin dealer. A K-9 officer then alerted on the Acura, and suspected narcotics were found near where the defendant was seated.

Officer Strickenberger testified that other officers on scene are typically "very inquisitive. So, yeah, we almost immediately will talk." [Doc. 66, p. 29]. He did not believe he had said anything to the other officers "about what's going on at the Exxon gas

8

station" *as of the time he was speaking with McKinney* near the commencement of the traffic stop, but that "a little bit later" he told the other officers, "here is what I have and here is what's going on." [*Id.*, p. 29-30]. Indeed, the dashcam video introduced at the motion hearing shows that all of the officers on scene (including Strickenberger and Hutton) were in frequent communication with one another during the almost 30 minutes preceding the defendant's arrest.[4]

Officer Hutton testified that Strickenberger "informed me that [the Acura] was involved in the investigation they were conducting." [*Id.*, p. 66]. That investigation involved McKinney's suspected straw purchases and, subsequently, the defendant's suspected involvement in those straw purchases *and* the suspicion that he is a heroin dealer. As to the latter of those inquiries, the drugs found in the Acura bolstered the information provided by McKinney.

Officer Hutton further testified that, around the time of the K-9 search, "I approached Officer Strickenberger to get a status is the best way I could describe it, kind of where we were going, what he needed from us, those kind of things." [*Id.*, p. 74]. Hutton specifically testified that detained the defendant partially "based on he was part of the investigation that Investigator Strickenberger was conducting." [*Id.*, p. 94]. Hutton directly spoke with Strickenberger at least once *after* the issue of the defendant's identification had been resolved. [*Id.*, p. 96]. Hutton continued to detain the defendant

---

[4] While the contents of those communications are not audible, both Officer Strickenberger and Officer Hutton credibly testified that it is common practice for KPD officers to turn off their microphones while discussing an investigation with one another.

9

at that point, and the defendant was placed in the back of the patrol car, partially "as part of the investigation originally that started from Investigator Strickenberger." [*Id.*, p. 97-98].

The Court finds the testimony of both officers credible. The information provided by McKinney on scene is also deemed credible, particularly because the admission of making straw purchases was not in her self-interest.

Magistrate Judge Poplin correctly recommends application of the collective knowledge doctrine in this case. The defendant's suggestion that Officer Hutton had insufficient knowledge of the broader investigation (and thus lacked grounds to detain him once his identification had been established) simply flies in the face of the evidence presented.

The collective knowledge doctrine applies even where there is only skeletal testimony and brief synopsis of what was happening on scene. *Lyons*, 687 F.3d at 769. The instant traffic stop was fast-moving. It involved multiple officers, multiple suspects, and multiple issues. In such circumstances, officers must act swiftly and cannot be expected to cross-examine their fellow officers on every point. *Id.* at 766.

The R&R objections presented by the defendant will be overruled.

II.

*Conclusion*

Finding itself in complete agreement with the magistrate judge, the court **ADOPTS** the findings of fact and conclusions of law set out in the report and

recommendation [doc. 64]. The defendant's objections to that R&R [doc. 77] are **OVERRULED**, and his suppression motion [doc. 22] is **DENIED**.

This case remains set for trial on June 14, 2022. The plea deadline remains May 3, 2022.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge